UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE FIGUEROUA, on behalf of himself and all others    Case No. 19-CV-03164 (PAE) (SN)
similarly situated,

                       Plaintiffs,

- against -

LA SPORTIVA N.A., INC.,

                       Defendant.
-----------------------------------------------------------------X

## CONSENT DECREE

1.      This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 11, by and between the following parties: Plaintiff Jose Figueroa ("Plaintiff") and Defendant La Sportiva N.A., Inc. ("Defendant"). Plaintiff and Defendant shall hereinafter be collectively referred to as the "Parties" for the purposes and on the terms specified herein.

## RECITALS

2.      Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

3.      On or about April 10, 2019, Plaintiff filed this action in the United States District Court for the Southern District of New York entitled <u>Jose Figueroa v. La Sportiva</u>

N.A., Inc., Case Number: 19-CV-03164 (PAE)(SN) (the "Action"). Upon filing, Plaintiff alleged that Defendant's website or websites and mobile applications (the "Website") are not fully accessible to individuals with disabilities in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York State Civil Rights Law ("NYSCRL"), and the New York City Human Rights Law ("NYCHRL").

4.   Defendant expressly denies that the Website violates any federal, state or local law, including the ADA, NYSHRL, NYSCRL, and the NYCHRL, and it denies any other wrongdoing or liability whatsoever, and Defendant has provided evidence that the Website is in compliance with WCAG 2.0 Level AA and is fully accessible to the blind and visually disabled. By entry into this Consent Decree, Defendant does not admit any wrongdoing.

5.   Plaintiff agrees that the Website is now accessible and in compliance with the ADA, NYSHRL, NYSCRL, and/or the NYCHRL.

6.   This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in Plaintiff's Complaint and in in the Action and all claims or issues that arise from such allegations.

7.   This Consent Decree is entered into by Plaintiff, individually, but is intended to inure to the benefit of vision impaired individuals who are members of the class alleged in the Complaint.

## JURISDICTION

8.   Plaintiff alleges that Defendant is a private entity that owns and/or operates the Website which is available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology. Plaintiff contends that the Website is a

service, privilege, or advantage of a place of public accommodation subject to Title III of the ADA. 42 U.S.C. §12181(7); 12182(a). Defendant denies that the Website is a public accommodation or that it is a place of public accommodation or otherwise subject to Title III of the ADA, NYSHRL, NYSCRL, and/or NYCHRL.

9. This Court has jurisdiction over the Action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188. The Parties agree that for purposes of the Action and this Consent Decree venue is appropriate.

**AGREED RESOLUTION**

10. Plaintiff and Defendant agree that it is in the Parties' best interest to resolve the Action on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in Plaintiff's Complaint. In resolution of this Action, the Parties hereby AGREE, and the Court expressly APPROVES, ENTERS, AND ORDERS the following:

**DEFINITIONS**

11. "Effective Date" means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

12. "Reasonable Efforts" means, with respect to a given goal or obligation, the efforts that a reasonable person or entity in Defendant's position would use to achieve that goal or obligation, and, with respect to Defendant's Website, shall mean commercially reasonable efforts to improve or maintain the existing level of accessibility of the Website so as to achieve or continue substantial conformity with the Worldwide Web Consortium's Web Content Accessibility Guidelines WCAG 2.0 Level AA Success Criteria (as defined therein)

("WCAG 2.0 AA"). Any disagreement by the Parties as to whether Defendant has used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in paragraphs 20 through 24 of this Consent Decree. Reasonable Efforts shall be interpreted so as to not require Defendant to undertake efforts the cost, difficulty or impact on the Website of which could constitute an undue burden, as defined in Title III of the ADA but as applied solely to the Website - as though the Website were a standalone business entity, or which efforts could result in a fundamental alteration in the manner in which Defendant operates the Website - or the primary functions related thereto, or which could result in a loss of revenue or traffic on its Website related operations.

13. The Website, as initially defined in Paragraph 3 above, means the U.S. portion of the eCommerce webpages owned and operated by or on behalf of Defendant that allow consumers to obtain information about Defendant's products and purchase products on-line for delivery to their homes or places of business in some geographic areas. "Website" does not include any mobile applications or Third-Party Content (as defined in Paragraph 14 below), nor does it apply to any portions of the Website directed at business users or Defendant's business partners, or those designated for internal use by Defendant or its affiliates or to websites not owned, operated or controlled by Defendant but that are linked from or to Website or its mobile applications.

14. "Third-Party Content" means web content that is generated by a third party and not owned, coded, managed, operated by or on behalf of Defendant, or hosted on the Website.

**TERM**

15. The term of this Consent Decree shall commence as of the Effective Date and remain in effect for the earlier of: (1) six (6) months from the Effective Date; or (b)

the date, if any, that the United States Department of Justice adopts regulations for websites under Title III of the ADA.

## GENERAL NONDISCRIMINATION REQUIREMENTS

16. Pursuant to the terms of this Consent Decree, Defendant:

   a. shall not deny persons with a disability (as defined under the ADA), including the Plaintiff, the opportunity to participate in and benefit from the goods, services, privileges, advantages, and accommodations through the Website as set forth herein. 42 U.S.C. §12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

   b. shall use Reasonable Efforts to provide persons with a disability (as defined under the ADA), including Plaintiff, an equal opportunity to participate in or benefit from the goods, services, privileges, advantages, and accommodations provided through the Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.202(b); and

   c. shall use Reasonable Efforts to ensure that persons with a disability (as defined under the ADA), including Plaintiff, are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, through the Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

## COMPLIANCE WITH TITLE III OF THE ADA

17. Web Accessibility Conformance Timeline: Plaintiff agrees that Defendant, as of the date of execution of this Consent Decree, has ensured accessibility to individuals with visual impairments. Plaintiff further agrees that Defendant has used Reasonable Efforts to improve the existing level of accessibility of the Website hereof and that

the Website is in full compliance with WCAG 2.0 AA as of 12 July 2019 (the "Compliance Date"). In addition, Defendant has adopted the Compliance Plan, attached as Exhibit A, which Plaintiff acknowledges and accepts as a Reasonable Effort on Defendant's part to maintain the Website in substantial compliance with WCAG 2.0 AA compliance, and to ensure that individuals with visual impairments have full and equal enjoyment of the goods, services, privileges, advantages, and accommodations provided by and through the Website.

      a.    The Parties agree that Defendant shall not be responsible for ensuring that Third-Party Content or plug-ins that are not owned by Defendant, but are otherwise posted or located on the Website or linked from the Website, are accessible or otherwise conform to WCAG 2.0 AA. The Parties acknowledge that Defendant's obligations under this Agreement do not include: (i) substantial conformance with WCAG standards for user-generated content and/or other content or advertisements and/or Websites Defendant does not own, operate, prepare or control but that are linked from the Website (including, but not limited to, any content/Websites hosted by third parties and implemented on the Websites); and (ii) the provision of narrative description for videos. The Parties also agree that if the U.S. Department of Justice or a Court with jurisdiction over this matter determines that the WCAG standards or any successor standard that Defendant may have utilized are not required by applicable law, Defendant may choose, in its sole discretion, to cease the remediation efforts described above.

      b.    In achieving and maintaining such conformance, Defendant may, among other things, rely upon, in whole or in part, the User Agent Accessibility Guidelines ("UAAG") 1.0; the Authoring Tool Accessibility Guidelines ("ATAG") 2.0; the Guidance on Applying WCAG 2.1 to Non-Web Information and Communications Technologies ("WCAG2.1ICT"), published by the Web Accessibility Initiative of the World Wide Web

Consortium ("W3C"); as well as other guidance published by the W3C's Mobile Accessibility Task Force; the British Broadcasting Corporation Mobile Accessibility Standards and Guidelines 1.0 ("BBCMASG 1.0") or any combination thereof. If Defendant, in reasonably relying upon any of the foregoing, fails to achieve substantial conformance with the applicable WCAG standard, Defendant will have nonetheless met its obligations.

    c. If Defendant is unable to achieve substantial conformance with the applicable WCAG guidelines despite having used Reasonable Efforts to achieve substantial conformance, it shall be deemed to have satisfied its obligations under this Agreement as set forth herein regarding remediation of the Website.

### SPECIFIC RELIEF TO PLAINTIFF

18. Specific Relief: Plaintiff and Defendant have agreed to settle all matters relating to costs, damages, attorneys' fees, experts' fees, other financial matters, relating to any alleged inaccessibility of the Website through a separate agreement (the "Settlement Agreement"), the remedial portions of which are hereby incorporated by reference into this Consent Decree but not publicly filed. The Settlement Agreement shall be provided to the Court *in camera* for inspection and review if the Court so requires in order to extend its enforcement jurisdiction over the terms of the Settlement Agreement.

### PROCEDURES IN THE EVENT OF DISPUTES

19. The procedures set forth below in Paragraphs 20 through 26 must be exhausted in the event that (i) Plaintiff alleges that Defendant has failed to meet its obligations pursuant to this Consent Decree or (ii) Defendant alleges that there are criteria of the applicable WCAG standard with which it cannot substantially comply as set forth herein.

There will be no breach of this Consent Decree by Defendant in connection with such allegations until all of the following procedures have been exhausted.

20. If a Party believes that any other Party has not complied with any provision of the Consent Decree, that Party shall provide the other Party with written notice of non-compliance containing the following information: (i) reasonable details and particulars of the alleged act of non-compliance; (ii) reference to the specific provision(s) of the Consent Decree that are involved; (iii) a statement of the remedial action sought by the initiating Party; and (iv) a detailed statement of the specific facts, circumstances and legal argument supporting the position of the initiating Party.

21. The initiating Party shall provide the non-initiating Party with sixty (60) days to either cure the alleged non-compliance (the "Cure Period") or provide a written response. If the alleged non-compliance is of a nature that it cannot be cured during the Cure Period, the Parties shall mutually extend the Cure Period to reflect the reasonable time period in which the alleged non-compliance can be cured. In either case, within sixty (60) days of receipt of a notice pursuant to Paragraph 20, unless the Parties agree to extend the time for response, the non-initiating Party shall respond to the initiating Party in writing stating that the issue has been cured, describing the status of the remedial actions curing the issue or providing its response to the allegations.

22. If the issue is not resolved within fourteen (14) days after the response described in Paragraph 21, the Parties shall informally meet and confer by telephone or in person and attempt to resolve the issues raised in the notice.

23. If the issue remains unresolved within thirty (30) days of the meet and confer referenced in Paragraph 22, the Parties will each have an additional thirty (30) days to select an expert and the two experts will mutually select an independent accessibility consultant with substantial experience in accessible website design who will evaluate the particular

accessibility issue(s) raised based on whether (i) the Defendant is obligated to remedy the issue pursuant to this Consent Decree, (ii) whether the issue raised is in substantial compliance with WCAG 2.0 AA, and (iii) whether a person who has a disability and uses screen reader software and has average screen reader competency ("person with a Visual Impairment who has average screen reader competency") can reasonably and adequately utilize the Website. The Parties shall split the fees and expenses of the independent accessibility consultant.

24. There will be no breach of this Consent Decree unless the independent accessibility consultant determines that (i) the Defendant is obligated to remedy the issue pursuant to this Consent Decree, and either that (ii) the issue raised is not in substantial compliance with WCAG 2.0 AA, or that (iii) the particular accessibility issue(s) raised cannot be accessed by a person with a Visual Impairment who has average screen reader competency using a prominent commercially available screen reader such as Jaws, Voiceover, or NVDA in combination with one of the following browsers (in versions of which that are currently supported by their publishers): Internet Explorer, Firefox, Safari, and/or Chrome; and (b) Defendant fails to remedy the accessibility issue using Reasonable Efforts within a reasonable period of time of not less than ninety (90) days of receiving the accessibility consultant's opinion. If the accessibility consultant believes that a reasonable time using Reasonable Efforts to remedy the accessibility issue found is longer than ninety (90) days, then the Parties shall agree on a longer time period, as reasonable to remedy the issue, without leave of Court so long as the extension is documented in writing and executed by the Parties or their respective counsel. If the accessibility consultant finds that a particular accessibility issue cannot be remedied using Reasonable Efforts, Defendant shall not be obligated to remedy that item and shall be in compliance with this Consent Decree.

25. Any of the time periods set forth in Paragraphs 21 through 24 may be extended by mutual agreement of the Parties.

26. Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

  For PLAINTIFF:  Joseph Mizrahi
           COHEN & MIZRAHI LLP
           300 Cadman Plaza West, 12th Fl.
           Brooklyn, NY 11201
           Tel: 917.575.4175
           E-mail: joseph@cml.legal

  For DEFENDANT:  Adam E. Collyer, Esq.
           LEWIS BRISBOIS BISGAARD & SMITH LLP
           77 Water Street, Suite 2100
           New York, NY 10005
           Tel: 212-232-1300
           Email: Adam.Collyer@lewisbrisbois.com

## **MODIFICATION**

27. No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## **ENFORCEMENT AND OTHER PROVISIONS**

28. The interpretation and enforcement of this Consent Decree shall be governed by the laws of the State of New York.

29. This Consent Decree contains the entire agreement of the Plaintiff and the Defendant concerning the subject matter described in Paragraph 3, other than the terms of the Settlement Agreement, which are included, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in Paragraph 3, shall be enforceable, other than the Settlement Agreement.

30. If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

## PERSONS BOUND AND INTENDED THIRD-PARTY BENEFICIARIES

31. The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of all persons with vision disabilities as defined by the ADA, including those who utilize a screen reader to access the Website.

32. The Plaintiff and the Defendant agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein and alleged in the Complaint. To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Action and the Complaint, the Party is no longer required to maintain such a litigation hold. Nothing in this Paragraph relieves any Party of any other obligations imposed by this Consent Decree.

33. The signatories represent that they have the authority to bind the respective parties, Plaintiff and Defendant to this Consent Decree.

## CONSENT DECREE HAS BEEN READ

34. This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

PLAINTIFF

Dated: 11-7-2019

By: /s/ *[signature]*

DEFENDANT

Dated: 11/12/2019

By: *[signature]*

Its: PRESIDENT

APPROVED AS TO FORM AND CONTENT:

PLAINTIFF'S LAWYERS

Dated: 11-7-2019

By: /s/ Joseph Mizrahi
Joseph Mizrahi
COHEN & MIZRAHI LLP
300 Cadman Plaza West, 12th Fl.
Brooklyn, NY 11201

DEFENDANT'S LAWYERS

Dated:

By: /s/ Adam E. Collyer
Adam E. Collyer, Esq.
LEWIS BRISBOIS BISGAARD &SMITH LLP
77 Water Street, Suite 2100
New York, NY 10005

*4838-6705-3228.1*
1910141657

12

Exhibit A
Compliance Plan

## COURT APPROVAL, ADOPTION, AND ENTRY OF THE CONSENT DECREE

**THE COURT, HAVING CONSIDERED** the pleadings, law, underlying facts and having reviewed this proposed Consent Decree,

**FINDS AS FOLLOWS:**

1) This Court has jurisdiction over the Action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188;

2) The provisions of this Consent Decree shall be binding upon the Parties;

3) Entry of this Consent Decree is in the public interest;

4) This Consent Decree is for settlement purposes only and does not constitute an admission by Defendant of any of the allegations contained in the Complaint or any other pleading in this Action, nor does it constitute any finding of liability against Defendant;

5) The Plaintiff is acting as a private attorney general in bringing the Action and enforcing the ADA;

6) The Court's jurisdiction over this matter shall continue for 6 months; and

7) This Consent Decree shall be deemed as adjudicating, once and for all, the merits of each and every claim, matter, and issue that was alleged, or could have been alleged by Plaintiff in the Action based on, or arising out of, or in connection with, the allegations in the Complaint.

NOW THEREFORE, the Court approves the Consent Decree and in doing so specifically adopts it and makes it an Order of the Court.

SO ORDERED:

*Paul A. Engelmayer*
U.S.D.J.

The Court approves the consent decree, except for paragraph 18. As per Rule 4.C of the Court's Individual Rules, the Court does not maintain jurisdiction over settlement agreements that are not publicly filed.

December 17, 2019

4838-6705-3228.1
1910141657

14